# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

LINDA TOMLIN JOHNSON,     )
                                      )
     Plaintiff,            )
                                      )
v.                             )     Case No.: 4:18-cv-01013-JEO
                                      )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,   )
                                      )
     Defendant.          )

## MEMORANDUM OPINION

Plaintiff Linda Tomlin Johnson appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act ("SSA"). (Doc. 1).[1] Johnson timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the court finds that the Commissioner's decision is due to be affirmed.[2]

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

## I.    Procedural History

Johnson was sixty years old at the time of the decision.  (R. 20, 95-96).[3] She graduated from high school and has past work experience as a waitress.  (R. 121-22, 288).  She alleges disability based on cellulitis, anxiety, abdominal pain, an irregular heartbeat, and flesh-eating bacteria.  (R. 287).

Johnson protectively filed an application for a period of disability and DIB on May 5, 2015, alleging that she became disabled on April 29, 2015.  (R. 11, 154, 243-46).  Her application was denied initially, (R. 154), and Johnson requested a hearing before an Administrative Law Judge ("ALJ"), (R. 178).  A video hearing was held on August 9, 2017.  (R. 89-123).  Following the hearing, the ALJ denied her claim.  (R. 8-25).  Johnson appealed the decision to the Appeals Council ("AC").  After reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-7).  That decision became the final decision of the Commissioner and is now ripe for review.  *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II.    Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically

---

[3] References herein to "R. __" are to the administrative record found at Docs. 6-1 through 6-8 in the court's record.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1509. The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* "Under the first step, the claimant has the burden to show that []he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 1520(a)(4)(i). At the first step, the ALJ determined Johnson has not engaged in substantial gainful activity since April 29, 2015, the alleged onset date.[5] (R. 13).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 1520(a)(4)(ii). An

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[5] Although Johnson worked after her alleged onset date, the ALJ concluded the work activity did not rise to the level of substantial gainful activity. (R. 13).

impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See id.* at § 404.1521. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).[6] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521. A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 404.1520. The claimant bears the burden of providing medical evidence demonstrating an impairment and its

---

[6] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

severity.  *Id.* at § 404.1521.  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(ii).  At the second step, the ALJ determined Johnson has the following severe impairments: degenerative joint disease of the cervical spine, degenerative disc disease of lumbar and thoracic spine, and obesity. (R. 14).  The ALJ specifically found her anxiety, mitral valve prolapse, and cellulitis with status post septicemia to be nonsevere.  (R. 14-16).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii) & (d); 404.1525; 404.1526.  The claimant bears the burden of proving his or her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  20 C.F.R § 404.1520(a)(4)(iii) and (d).  At the third step, the ALJ determined Johnson did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings.  (R. 16).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e).  A claimant's RFC

is the most she can do despite his impairment. *See id.* at § 404.1520. At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving that her impairment prevents him from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined Johnson has the RFC to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). (R. at 16-19). More specifically, the ALJ found Johnson had the following limitations with regard to light work:

> the claimant can occasionally climb ramps and stairs, stoop, kneel, and crouch. She should never climb ladders, ropes or scaffolds, nor should she crawl. The claimant can have only occasional exposure to vibration as well as hazards such as unprotected heights and dangerous machinery.

(*Id.*). At the fourth step, the ALJ determined Johnson was capable of performing her past relevant work as a waitress. (*Id.* at 19-20). With this determination, the

inquiry ended.  *Id.* at § 404.1520(a)(4)(iv).  The ALJ found Johnson had not been under a disability as defined by the SSA since April 29, 2015.  (R. 20).

## III.    Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Johnson makes four arguments in favor of remand. First, she contends the Appeals Council failed to review new, material, and chronologically relevant evidence from her treating physician. Second, Johnson asserts that the ALJ failed to show good cause for rejecting the opinion of her treating physician. Third, Johnson argues the ALJ's finding that she can perform her past relevant work is not supported by substantial evidence and is not in accordance with proper legal standards. Finally, she contends that the ALJ did not comply with SSR 96-8P in formulating her RFC. The court addresses each argument below.

### A. Evidence Submitted to Appeals Council

Johnson first argues that the Appeals Council failed to adequately consider the additional evidence she submitted along with her request for review. (Doc. 12 at 13-22). Johnson lists this evidence as including medical records from Riverview Regional Medical Center dated September 3, 2015, Dr. Henry Born's Clinic dated

November 18, 2015 to April 11, 2018, and Gadsden Regional Medical Center dated March 15, 2017. (*Id*. at 13). She also complains that the Council failed to review and consider the medical source statements from Dr. Born dated April 11, 2018. (*Id*.). The Commissioner argues that the decision is due to be affirmed because the Council did not err in failing to consider the evidence because the medical source statements did not create a reasonable probability of changing the outcome of the ALJ's decision. (Doc. 18 at 4-11). The Commissioner further argues that because Johnson has not challenged the Council's conclusions that the other medical records would not change the outcome of the decision, this aspect of the claim is abandoned. (*Id*. at 5, n.2). The court agrees with the Commissioner.

As a general matter, a claimant is entitled to present evidence at each stage of the administrative process. *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1308 (11th Cir. 2018). If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Evidence is material if a reasonable possibility exists that the evidence would change the administrative result. *Washington*, 806 F.3d at 1321. New evidence is chronologically relevant if it "relate[s] to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(c), 416.1470(c) (2016).

The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted).

At issue here are two forms completed by Johnson's treating physician, Dr. Henry Born, that Johnson submitted to the Appeals Council. [7] (R. 2, 87-88). The first is a "physical capacity form," dated April 11, 2018. (R. 87). The second is a "mental health source statement," also dated April 11, 2018. (R. 88). The Appeals Council concluded that this new evidence did not relate to the period at issue, and, therefore, it did not affect the decision. (R. 2). The court first addresses the physical capacity form and then moves on to the mental health source statement.

The one-page physical capacity form describes Johnson's conditions as "degenerative arthritis, mitral valve prolapse, [and] anxiety." (R. 87). The form describes the side effects Johnson experiences from her medications as "fatigue" and "lethargy." (*Id.*). As far as limitations, Dr. Born circled the following on the form concerning her physical capacities: Johnson can sit for two hours, stand for

---

[7] It is unclear from Johnson's initial brief if she contests the decision by the Appeals Council regarding the other new evidence she submitted. (*See* Doc. 12 at 13-22). The Commissioner contends that "[a]lthough Plaintiff references several treatment records [s]he submitted to the Appeals Council, [s]he only argues that the Appeals Council erred in finding that an April 2018 medical source statement from Henry Born M.D., was not chronologically relevant." (Doc. 18 at 4-5). As such, the Commissioner argues that Plaintiff abandoned any other issues related to the other evidence submitted to the Appeals Council. (*Id.* at n.2). Johnson did not respond to this argument, but instead repeated the same argument made in her initial brief. (Doc. 19 at 1-6). Therefore, the court concludes that Johnson only challenges the evidence related to Dr. Born's April 11, 2018 medical source statements. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 857, n.1 (11th Cir. 2013) (failure to explicitly challenge a determination of the ALJ constitutes abandonment of the claim).

less than 30 minutes, and would be expected to lay down, sleep or sit with legs propped for two hours in an 8-hour day. (*Id*.). It further states Johnson would be expected to be off task 30% in an 8-hour day and would miss 6 days in a 30-day period due to physical symptoms. (*Id*.). The form states the limitations exist back to April 15, 2015, and are expected to last twelve or more months. (*Id*.).

As conceded by the Commissioner, "Dr. Born's opinion regarding Plaintiff['s] physical limitations is arguably chronologically relevant" because the form stated the limitation applied to the time before the ALJ's decision and Dr. Born treated Plaintiff during the relevant time. (Doc. 18 at 6). The Commissioner argues, however, that the conclusion by the Appeals Council is essentially harmless error because Dr. Born's opinion concerning Johnson's physical limitations is not material in that it does not create a reasonable probability of changing the decision. (*Id*. at 6-11). The court agrees.

The individual opinions marked on the form by Dr. Born are not supported by his treatment records concerning Johnson or the other medical records in the case from the relevant time period. In September 2014, Dr. Born notes reference Johnson's degenerative arthritis, chronic anxiety and mitral valve prolapse. They further state that Johnson was "stable and there is nothing much new" and that her medications would be continued. (R. 490). Johnson next saw Dr. Born in February 2015 when he noted Johnson was "doing well" and there were no

abnormal findings on her physical examination. (R. 489). His diagnosis included chronic anxiety and mitral valve prolapse, but did not mention her arthritis. Johnson was continued on her medications. (*Id*.).

In April 2015, Johnson was treated at the Gadsden Regional Medical Center for abdominal pain and underwent surgery for an abdominal wall abscess. (R. 445-59, 465-66). About a month after her surgery, on May 26, 2015, Johnson again saw Dr. Born. Based on her reports, he opined that "she had cellulitis of the abdomen and then she developed septicemia." (R. 488). She was, however, "feeling better" and her physical examination was otherwise normal. (*Id*.). A few days later, on June 8, 2015, she had a follow-up visit with her surgeon, Dr. Steven Jackson, where Johnson reported she was "feeling good." (R. 467). Dr. Jackson noted that her incision was healing well and her pain was within normal limits for the procedure performed. (*Id*.).

On June 6, 2015, Dr. Born wrote a "Whom it May Concern" letter at the request of Johnson. (R. 487). The letter states that Johnson is "chronically anxious," that she has been depressed at times, "has had mitral valve prolapse and also status post septicemia." (*Id*.). The letter details her hospitalization and surgery for the infection in her abdomen and notes that it should improve or be completely relieved. (*Id*.). Regardless, Dr. Born states Johnson "does not have too

much energy at this time," and repeats his diagnosis regarding her chronic anxiety and mitral valve prolapse, as well as her high cholesterol. (*Id*.).

Johnson returned to Dr. Jackson on July 6, 2015, where she reported that she was doing well and continued to pack her wound daily. (R. 512). Dr. Jackson noted that the wound was still open, but healing well. (*Id*.). Her next appointment was two weeks later, where Dr. Jackson noted that the "wound [was] now only superficial with good granulation tissue." (R. 517). He further noted that it was "continuing to heal nicely" at her next visit on July 27, 2015. (R. 519). On August 10, 2015, he noted that the wound was "healing well" and the "incision [was] intact." (R. 521). By her final visit on August 21, 2015, Dr. Jackson noted that Jonson's abdomen was normal upon visual inspection, and although there was a "small pimple on abdomen," there was no sign of infection with the wound being "superficial" at that point. (R. 524).

The next treatment notes in the record that were before the ALJ are from October 2017, when Johnson had x-rays of her neck and back. (R. 541-43). In her neck, the x-rays show minimal atherosclerosis and minimal facet degenerative disc disease with no loss in disc space height. (R. 541). With regard to her back, Johnson had minor osteophytic changes in her upper back, minor scoliosis, and mild to moderate degenerative changes in her lower back. (R. 542-43).

Based on the above, the court finds that the treatment notes regarding Johnson's physical conditions do not support the conclusions on the physical capacities form completed by Dr. Born. There is nothing in the notes from Dr. Born's examinations of Johnson to support the limitations circled or stated on the form, nor is there any evidence from any other source that supports the limitations. As such, the court concludes the physical capacities form completed by Dr. Born would not have changed the administrative result in this instance and, therefore, was not material evidence.[8] Accordingly, the Appeals Council was not required to consider it. Any error by the Appeals Council was, therefore, harmless, and not grounds for remand. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination).

---

[8] This conclusion does not change even if the court considers the other treatment records from Dr. Born that were submitted to the Appeals Council, but not before the ALJ. (R. 62-68). From November 2015 until March 2017, Dr. Born noted no abnormal physical findings, but continued to note Johnson's history of mitral valve prolapse. (R. 64-68). She did have an abnormal EKG and fluttering sensation in July 2017, but the August 2017 treatment notes reflect a regular sinus rhythm. (R. 62-63). Dr. Born diagnosed Johnson with degenerative arthritis for the first time in August 2017, noting point tenderness and pain within her range of motion in her lower back. (R. 62). None of these treatment records regarding Johnson's physical conditions support the conclusions on the physical capacities form completed by Dr. Born.

As for the mental health source statement, the Appeals Council also concluded that this evidence did not relate to the period at issue, and, therefore, it did not affect the decision. (R. 2). The form provides that Johnson had some limitations based on her mental health. It states that Johnson could not (1) maintain attention, concentration and /or pace for periods of at least two hours; (2) maintain an ordinary routine without special supervision; (3) adjust to routine and infrequent work changes; (4) interact with co-workers; and (5) maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness. (R. 88). It also states that she be off-task 30% of an 8-hour day and that she would miss six days a month due to her psychological symptoms. (*Id.*). As noted by the Commissioner, the mental source statement is silent on when the limitations started. (*Id.*). Specifically, one of the questions on the form asks, "Have the limitations existed back to 04/29/15" and has a place to circle either "yes" or "no." (*Id.*). Dr. Born did not circle either. (*Id.*). Without this information, the court cannot say that the Appeals Council erred in determining that the new evidence was not chronologically relevant.

Even if the court were to determine that the mental health source statement was chronologically relevant, it is not material for a number of reasons. First, the mental health source statement is a series of yes or no questions with absolutely no explanation for the answers given. (R. 88). It is conclusory and has limited

probative value. Indeed, several courts have criticized "form reports" such as the one Dr. Born provided where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports her decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Second, none of the treatment records support the conclusions enumerated by Dr. Born on the form. Notably, the entire record does not include any treatment from a mental health provider. As described in detail above, the only records regarding her mental health are from Dr. Born and include a diagnosis of "chronic anxiety" and prescriptions for Xanax. (R. 480-83, 539). There are no documented metal status examinations from any treating source. Instead, as noted by the ALJ,

the diagnosis seems to be based purely on her subjective complaints and reports to Dr. Born. The state agency psychological consultant, Stephen Dobbs, Ph.D., reviewed the record as of October 2015 and found Johnson's mental impairments were not severe. (R. 165-66).

Based on the above, the court finds that the record regarding Johnson's mental condition does not support the conclusions on the mental health source statement form completed by Dr. Born. There is nothing in the notes from Dr. Born's examinations of Johnson to support the limitations circled or stated on the form, nor is there any evidence from any other source that supports the limitations. As such, the court concludes the mental health source statement would not have changed the administrative result and was not material evidence. Accordingly, even if it was chronologically relevant, the Appeals Council was not required to consider it. Any error by the Appeals Council was, therefore, harmless, and not grounds for remand. *See Diorio*, 721 F.2d at 728; *Reeves*, 734 F.2d at 524.

B.    **Treating Physician**

Johnson next asserts that the ALJ erred in failing to articulate good cause for according no weight to the opinion of Dr. Born that "she really is not capable of much, if any, employment" as her treating physician. (Doc. 12 at 22-24; Doc. 19 at 6-7). She further argues that the ALJ failed to show good cause for discounting Dr. Born's opinion. (*Id*.). The Commissioner counters that substantial evidence

supports the ALJ's decision. (Doc. 18 at 11-18). The court again agrees with the Commissioner.

The evidence concerning the relevant opinions by Dr. Born is contained in an August 31, 2016 letter addressed to the Disability Determination Service. (R. 539). The letter states as follows, in full:

> My patient, Ms. Linda T. Johnson, has been with me for 30 years. This patient has ongoing problem with anxiety which has over the years slowly gotten worse. She has developed agoraphobia and panic as well. We have her on Xanax for years and this is partially controlled. However, she is emotionally labile and quite nervous. She has Mitral Prolapse for years too. She has been on Inderal for this.
>
> Over the last 15 years she has developed steadily worsening degenerative arthritis. She has had pain in her neck and her back. It hurts to bend, lift, turn, or to stoop. Sitting and standing in any one position for any length of time bothers her as does being on her feet as well.
>
> She has had stressors at home as well. Her significant other has been with her for many years. He is chronically ill and she has quite a few worries regarding him.
>
> She has been working as a waitress for years, but as time goes by, this is becoming more and more difficult for her. She has to be alert, awake, friendly, and attentive to customers. This is becoming increasingly difficult with all her problems, particularly with the pain and also her anxiety. She works in a busy restaurant and with a large number of people there, this makes her agoraphobia and anxiety worse.
>
> This has now reached the point where she is not really capable of much, if any, employment.

(*Id*.).  Johnson is correct that the ALJ gave no weight to the opinion of Dr. Born. (R. 19).  The ALJ specifically stated that she gave this opinion no weight because it was based on subjective complaints from Johnson without diagnostic findings, minimal treatment records, and was dated more than a year after Dr. Born's last treatment or examination of Johnson.  (R. 18-19).

The ALJ bears the responsibility for assessing the extent of a claimant's work-related abilities and limitations based on all relevant evidence in the record, including the medical opinions submitted by any treating, examining, or non-examining source. (*See* 20 C.F.R. §§ 404.1545(a), 416.945(a). A treating physician's opinion is generally entitled to deference – substantial or considerable weight.  *See Phillips v. Barnhart*, 357 F.3d 1240-41 (11th Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c)(2).  An ALJ may, however, reject the opinion of a treating physician for "good cause" such as where the opinion is conclusory, not bolstered by the evidence, or inconsistent with the record.  *Winschel v. Comm'r of Soc. Sec*., 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips*, 357 F.3d at 1240-41.  "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so."  *Winschel*, 631 F.3d at 1179 (quotation marks omitted) (alteration in original). Good cause exists when "the (1) treating physician's opinion [is] not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion [is] conclusory or inconsistent

with the doctor's own medical records." *Id*. (quotation marks omitted). The court is not to "second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec*., 808 F.3d 818, 823 (11th Cir. 2015).

Where the treating source opinion is not given controlling weight, the ALJ is to weigh all medical opinions by considering the examining or treating relationship with the individual, the evidence the physician presents to support his or her opinion, the consistency of the physician's opinion with the record as a whole, the physician's specialty, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, a state agency medical consultant's opinions may be entitled to greater weight than a treating source's opinion if it is supported by evidence in the record and a better explanation for the opinion. *See* 20 C.F.R. §§ 404.1527 (e); Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2-3 (July 2, 1996); *Jarrett v. Comm'r of Soc. Sec*., 422 F. App'x 869, 874 (11th Cir. Apr. 11, 2011) (the ALJ did not err in relying on the opinions of the non-examining physicians over the plaintiff's treating physician).

Here, substantial evidence supports the ALJ's decision to give no weight to the opinion of Dr. Born articulated in the August 31, 2016 letter. Although stating that "[t]he doctor's opinion in this case is well supported by clinical and laboratory findings" (doc. 12 at 24), Johnson fails to identify these medical records and the

court's review of the record finds none.  Instead, as discussed in detail above, the medical records do not support the conclusions stated in the letter.  The statements in the letter are inconsistent with Dr. Born's own treatment notes, as well as the treatment notes from the other treating physicians.  Simply put, the record does not support the physical limitations listed by Dr. Born.  As for Johnson's "chronic anxiety," the medical records show conservative treatment with medication and no treatment by a mental health care provider.  Instead, the court agrees with the ALJ that the opinion appears to be based on "subjective complaints from the claimant . . . ."  (R. 18).  Reliance on a claimant's subjective complaints of pain as a primary basis for an opinion is a valid reason to discount a treating physician's opinion. *See Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (substantial evidence supported ALJ's decision to give less weight to opinion of treating physician who "relied too significantly on [claimant's] subjective reports"); *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (citing *Crawford*, 363 F. 3d at 1159).

Additionally, the ALJ articulated specific reasons for discounting Dr. Born's opinion and Johnson does not challenge or address the reasons stated.  Instead, she cites the court to a case where the ALJ failed to state with some measure of clarity the grounds for discounting the treating physician's opinion.  (Doc. 12 at 24 (citing *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015)).  This case, and

the others cited by Johnson, are not applicable as the ALJ clearly articulated her reasons for rejecting Dr. Born's opinion in this instance.

For these reasons, the court concludes that substantial evidence supports the decision to the ALJ to give no weight to the opinion of Dr. Born.

## C.    Past Relevant Work

Johnson argues that the ALJ failed to adequately develop the record as to the physical requirements of her past work.  (Doc. 2 at 24-28).  The Commissioner responds that the ALJ adequately considered Johnson's prior work history, including the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and substantial evidence supports the ALJ's determination that Johnson could perform her past relevant work. (Doc. 18 at 18-21). The court agrees with the Commissioner for the following reasons.

"The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015).  Where "there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant's past work, and, therefore, cannot say whether the claimant is still able to perform that work given his current limitations.  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). The Eleventh Circuit has remanded for further inquiry, for instance, where the

record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her past work. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).

Here, the record contains evidence regarding the demands of Johnson's past work as a waitress. Johnson completed a "Work History Report" as part of her application. (R. 330-37). For each of her former jobs, the form instructed her to answer a series of questions, including, but not limited to:

- "Describe this job. What did you do all day?"

- "In this job, did you: . . . Do any writing, complete reports, or perform duties like this?"

- "In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? (Bend down and forward at waist) Kneel? (Bend legs to rest on knees) Crouch? (Bend legs & back down & forward) Crawl? (Move on hands & knees) Handle, grab or grasp big objects? Reach? "Write, type of handle small objects?"

- "Explain what you lifted, how far you carried it, and how often you did this."

(*Id*. at 331-36). The form also asked Johnson to "[e]xplain what [she] lifted, how far [she] carried it and how often [she] did this." (*Id*.). Finally, it asked her to indicate for each job the "heaviest weight lifted," as well as the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." (*Id*.).

With regard to the waitressing job, Johnson described her duties as follows: "I waited tables, carried food/trays/drinks, full pitchers, etc., stocked plates/glasses/ etc., took and wrote down orders, refilled drinks." (R. 331). In answering the above questions, she indicated that while doing the job, she walked, stooped and crouched for six hours throughout the day and reached for one hour a day. (*Id*. at 331, 333-34). She answered "0.00" hours for standing, sitting, climbing, kneeling and crawling. (*Id*.). Johnson also indicated that she handled big and small objects and had to write and complete reports. (*Id*.). When describing her lifting and carrying, Johnson stated that she "lifted trays with heavy full glasses, usually 3 at a time and those collectively held a gallon" and she "lifted and moved large trays of food, plates, glasses, to-go orders etc." (*Id*. at 331). The heaviest weight she lifted, including frequently lifted, was less 22-25 pounds. (*Id*.).

At the hearing, the ALJ questioned Johnson about her work as a waitress. (R. 102, 111-12, 114, 117-20). Additionally, the ALJ asked the vocational expert to give her the "DOT title, including the SVP and exertional level" of a waitress. (R. 121-22). While the vocational expert did not explicitly describe the tasks of an informal waitress, he classified this job as "light in exertion, lowest level of semi-skilled, with an SVP of 3" and referred the ALJ to the listing for the job in the Department of Labor's Dictionary of Occupational Titles ("DOT"). (R. 122). *See* 20 C.F.R. § 416.960(b)(2) (stating that an ALJ may consult a "vocational expert"

and the "Dictionary of Occupational Titles" at Step Four). The DOT contains detailed descriptions of the duties and physical requirements associated with each occupation, as generally performed in the economy.

Recently, in a case very similar to the one at issue, the Eleventh Circuit concluded that "[t]he Work History Report, testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant]'s past relevant work . . . " and found that such evidence sufficient to compare the claimant's current abilities to the demands of her previous employment. *Holder v. Social Security Admin.*, 2019 WL 1934187, at * 4 (11th Cir. May 1, 2019); *Frazier v. Berryhill*, 2019 WL 3220025, *5 (N.D. Ala. Jul. 17, 2019) (M.J. Ott); *Parker v. Berryhill*, 2019 WL 2928841, *6 (N.D. Ala. Jul. 8, 2019) (M.J. Ott). The ALJ here had the same information before her in making the determination that Johnson could return to her past work. The court finds that this determination is supported by substantial evidence and Plaintiff is not entitled to any relief.[9]

---

[9]Alternatively, the court finds that any purported failure by the ALJ to specifically address Johnson's relevant work history in her opinion is harmless and not a cause for reversal or remand for the reasons stated above. There was plenty of evidence in the record regarding Plaintiff's past work history and the demands of her job as a waitress. *See Diorio*, 721 F.2d at 728 (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves*, 734 F.2d at 524 (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter*, 609 F. App'x at 558 ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

**D.     SSR 96-8a**

Johnson's last argument is that the RFC finding in not supported by substantial evidence.  (Doc. 12 at 28-30; Doc. 19 at 11-13).  Specifically, Johnson contends that the RFC is conclusory and violates SSR 96-8a.  (Doc. 12 at 29-30; Doc. 19 at 12-13).  The Commissioner responds that the ALJ's RFC finding limiting Johnson to a reduced range of light work complies with SSR 96-8p.  (Doc. 18 at 21-25).  The court agrees with the Commissioner.

SSR 96–8p regulates the ALJ's assessment of a claimant's RFC.  Under SSR 96–8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .  Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96–8p at 1. The regulation specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  SSR 96–8p at 6.

The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his or her findings with respect to a plaintiff's "functional limitations and work-related abilities on a function-by-function basis,"

they nonetheless meet the requirements under SSR 96–8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (an ALJ's RFC finding is sufficiently detailed despite lacking an express discussion of every function if there is substantial evidence supporting the ALJ's RFC assessment). In addition, the ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

Here, it is evident that the ALJ considered all of the evidence in the record in assessing Johnson's RFC. The ALJ specifically states that "the residual functional capacity has been assessed based on all the evidence," including all of Johnson's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 C.F.R. § 404.1529 and SSRs 96-8p and 16-3p. (R. 16-17). The ALJ notes that she "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 1527" and that she carefully reviewed Johnson's subjective complaints. (R. 17).

After stating the above, the ALJ discussed the medical evidence of record, as well as Johnson's hearing testimony and subjective complaints. (R. 17-19). While she did not include each and every doctor visit in the record, the ALJ specifically

detailed the medical records from Dr. Born, her treating physician, and Dr. Dobbs, the state agency psychiatrist, as well as the consultative examiner, Dr. Krishna Reddy. (*Id*.). More importantly, the ALJ specifically discussed each limitation and why they were included or not included in her RFC determination. (R. 18-19). Plaintiff's argument regarding a finding of no functional limitations, (doc. 19 at 13), is inapposite as the ALJ imposed clear limitations on Johnson's ability to perform light work.[10] (R. 16). As such, the court concludes that the ALJ complied with SSR 96–8p, especially considering the fact that the ruling does not require a detailed analysis in the ALJ's written decision of a claimant's ability to perform each function.

## V.     Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

---

[10] Additionally, Johnson's citation to *Thomason v. Barnhart*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), for the proposition that the RFC assessment is unsupported by substantial evidence because there was not opinion evidence from a physician precisely matching the limitations in the RFC finding is unpersuasive. The determination of a claimant's RFC is an administrative determination left for the Commissioner and not reserved for medical advisors. *See* 20 C.F.R. § 404.1546.

**DATED** this 24th day of July, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge